My name is Justice Margaret McBride and today presiding with me on the case I'm going to call momentarily is Justice Nathaniel House and Justice Cynthia Copps. So at this time I will call the case of the Better Government Association versus the City of Chicago Office of the Mayor and City of Chicago Department of Public With that, the attorneys that are going to be arguing for either of the sides could you simply identify yourself by name at this moment? My name is Ellen McLaughlin on behalf of the appellant City of Chicago Mayor's Office and Department of Public Health. Good morning. Good morning, your honors. My name is Josh Verdae on behalf of Plaintiff Appellee, Better Government Association. Good morning to both of you. Before we begin the arguments I'd like to advise each of you that you're going to have about 10 minutes of uninterrupted argument and I'm going to kind of keep a time timer going here. After the 10 minutes, Ms. McLaughlin, since you will be first, we'll then turn it over to the justices for questions. After that we will then proceed with Mr. Verdae and on behalf of the Better Government Association. And same thing, we're going to try to keep the time here but I think both of you should know that we we're not going to cut you off from what we need to tell us in terms of your positions on appeals. And from that time also, Ms. McLaughlin, after you've presented your arguments, since Mr. Verdae has presented his, we will give you some time for rebuttal. All right? So are both of you ready then to proceed? Yes, your honor. All right, so thank you and then Ms. McLaughlin, you may proceed. May it please the city conduct it a reasonable search for records in response to BGA's specific FOIA request. The city's search was reasonable although it did not search the custodian's private account for public records. Today I first want to explain what a reasonable search requires and indeed that can begin and end the analysis here. FOIA requires the public body to search locations likely to contain responsive records. The city did that, making it search reasonable and BGA has pointed to nothing to indicate otherwise. I will also address BGA's position that the city has to search private accounts in response to any required communication. That ignores the reasonable search requirement, it puts an unreasonable burden on public bodies, and it is incompatible with the way the General Assembly designs FOIA, FOIA's language, and the appellate court's decision in the City of Champaign versus Madigan. To begin, FOIA requires the search that's reasonable and right, the public body has to search likely locations of records, every location that could hypothetically contain public records. That says, the BGA claims in this does not undermine the finding that the agency conducted a reasonable search for them. So let me apply that requirement to this case. Here BGA sought communications between former Department of Public Health Commissioner Dr. Julie Morita and people at CPS and the mayor's office. Notably, BGA did not specify that it requested communications from private accounts. Each of those custodians had a place for the city to begin the search was with those city email accounts. Our FOIA team entered their names and search terms into our city records system and indeed found responsive records. What they did not find was an indication that private accounts were used for additional communications. And what I mean is that nothing there indicated that parts of that discussion were missing, there were no references to other documents or other communications, no private accounts were copied on those email exchanges, and two, Dr. Morita was a party to every communication that BGA requested and there was no indication in this record or anywhere that Dr. Morita had used a private account for work communications. Therefore, based on all that the city concluded that its search was complete and it produced those records to BGA. BGA in its complaint primarily challenged redactions that the city had made which aren't now in dispute. It did not initially argue that private accounts should have been part of the search and in fact it didn't mention private accounts in its opening or reply brief on summary judgment but only did so in a supplemental filing and then it only speculated that the city employees private accounts could contain public records because in other situations public officials have used private accounts to conduct business. BGA didn't explain why that was likely the case here. It did not mention Dr. Morita and then in its ruling neither did the circuit court. The court simply said it's unclear whether additional records exist on private accounts. Now as I've explained, speculation does not render a search unreasonable and that was nothing but speculation. Here the city searched likely repositories of records. There was no indication additional records existed and that rendered the search reasonable given BGA's request here. As in anything pointing otherwise but from BGA or the circuit court, the circuit court's judgment should be reversed. Now I also do want to touch on BGA's position that even as in any specific indication of for the communications at issue, a search for public records always has to include public employees private accounts. That is incorrect. First it's not what a reasonable search requires. There is no one-size-fits-all search requirement under FOIA. A search has to be tailored to the request that's at issue and here it was. Second, if we look at the way FOIA is designed, it's clear the General Assembly did not intend that public bodies would have to routinely search third-party private accounts in response to FOIA requests. For once, FOIA has a five-day response time with a single five-day extension. That is a strong indication that the General Assembly expected public bodies to search their own record system and that five-day deadline bears on what a city receives thousands of FOIA requests every year. Some of those involve multiple custodians. We may have to search for records from 50 or a hundred different custodians. Now that's possible to do by entering names and key search terms in our own record system, but that is a completely different task than tracking down every individual employee, asking them about their private communications, attempting to get their emails from them, especially when some of those people may not work for the city anymore. We, of course, still have to review and redact the emails before producing them. So I think that makes clear that requiring that additional step in anything but exceptional cases is extremely burdensome and in fact it is self-defeating to the purposes of FOIA because it could hinder the public body's ability to respond to other records requests. There is, too, no mechanism in FOIA under which a public body can obtain its employees' private emails. We don't control those emails in the way that the city controls emails on a city email account. FOIA also states in Section 1 that it is not intended to invade personal privacy, but if public employees' private emails are regularly subject to production, their employers and potentially the courts would have to review those private emails, and potentially a lot of them. A keyword search can generate thousands of hits that then have to be reviewed to determine which would be responsive. So having a co-worker go through thousands of your private emails is very intrusive. That could harm employee morale. It could harm retention. It could disincentivize public employment. Finally, I want to spend a moment on the definition of public records under FOIA because the city needed to search for public records and that bears on whether the search here was reasonable because not every mention of city business on a private account will constitute a public record. The definition of public record is in Section 2C of FOIA and it says that FOIA pertains to the transaction of public business, but they also have to be prepared by or for, or be used by, received by, in the possession of, or under the control of the public body. That means that if an employee's communication is not possessed or controlled by the public body and it was not prepared for, used by, relied on the public body itself, that's not a public record. That is exactly what the appellate court held in Champaign, which is the only appellate court case we have that addresses when FOIA reaches emails on private accounts. In Champaign, the court focused on whether the email has that necessary connection to the public body. That could happen if an email was forwarded to a government account. It could also happen, in that case, if the email was sent to a quorum of city council members while the council was in session, because then it could be deemed in the possession of the council, which was the public body. And for that reason, the emails at issue in Champaign were deemed public records, but the court made it clear that an email between an individual council member and a constituent on a private account was not a public record, even if it mentioned public business, because an individual council member was not the same thing as the public body. Champaign, too, emphasized that if the General Assembly wanted FOIA to reach emails on private accounts, it could amend FOIA. That case was decided in 2013. The General Assembly has not overruled FOIA to, amended FOIA to overrule Champaign, and it has not redefined public body to include individual employees. So applying Champaign here and its definition of public record, that simply makes it even less likely that public records would be located on the custodian's private account here. An email is not a public record unless it's prepared for use by the public body itself, and there is no indication that records of that nature existed. Indeed, as I've already explained, there's no indication that references to the matter at issue here existed at all on private accounts. So to conclude, absent some indication that private accounts contain public records responsive to BJA's request, it was reasonable for the city to search city accounts for responsive public records. As the city conducted a reasonable search in compliance with FOIA, the judgment of the circuit court should be I'm happy to take your questions. Your Honor, I think that you're muted. Sorry about that, you're correct. At this juncture, I would ask Justice House if he has questions he'd like to pose to Mr. Glockman. Okay, Mr. Glockman, you started out, you don't dispute that private records could be, private communications on privately owned devices could be public records. You're basically stating that when a request is made to an agency, there's no requirement to look on those privately owned devices unless there's some indication that they were used for city business. How could a private citizen ever acquire knowledge that the individual is using his private device, you know, with specific facts? How could they ever discover even properly materials that are properly under FOIA under those circumstances under your interpretation? Your Honor, you're correct that we are not making a categorical argument that just because something's on a private account, it could never be subject to FOIA. Rather, we are, our argument is that FOIA always requires a reasonable search, and then in this case, the search was reasonable. To the point that, how would we know? How would we know if private devices were being used for communication? Well, actually, my question goes to how would a requester know to include that in a request? Certainly, BJA is a sophisticated requester and knows how to specify what it's looking for. They do, in some requests, ask for emails on private accounts. But, of course, not all requesters are so sophisticated, and thus, we're not disputing that a request for communications could theoretically include private accounts, even if the requester didn't state as such. And so, I think that another piece of this question is, at what point is that sort of additional search requirement triggered? And that may be sort of the underlying issue here. Does the requester have to have some sort of inside-baseball knowledge that that's happening in order to compel that kind of expansion of the search? And the answer to that is no. We can hypothetically think of situations where a public body would need to expand its search, and the city has, in other cases, produced emails on private accounts because the evidence pointed in that direction. So, for example, if we were to do a record search, and I think, as I already explained, if there was an indication that there were additional records out there, if there was a reference to some other method of communication, if we saw that as a city, our team doing that search, then we follow those leads, and we would have to expand the search, potentially. Likewise, if the requester got the records and saw some kind of indication that something else is out there that we missed, then we might have to expand the search. So, they don't have to know when they're making the request. Rather, as with any sort of search, you follow where the search leads you. It's really no different than any search for records. So, for example, if we have a search that is for hard copies of records, and you go and you look in a filing cabinet, and you see that some file is missing or has been checked out, then you follow that to the office where it is to be found. Now, if a city employee had taken that file home, we would still consider that a public record, and we would then expect them to bring it back, and we would produce that. Now, we can follow that kind of analysis with digital records as well. We can follow where the search leads you. And the point is that the fact that a hard copy of a record could be located in someone's home doesn't mean we automatically search everyone's home every time we're not reasonable in most cases. Likewise, theoretically, a digital copy of a record could be located on a private account, but that doesn't mean that we begin every search by searching people's private accounts. Rather, we follow where the evidence leads us. So, you don't need to rewrite FOIA for the digital context. The reasonable search requirement applies regardless of the manner of communication or the type of document that is at issue. And, in fact, it reasonably balances that need for transparency with the other very compelling interest in searches being logically feasible and not too burdensome for the public body and also not too intrusive on the private lives of public employees. Okay. I have nothing further. All right. Justice Cox, do you have questions for Ms. McLaughlin? Thank you, Justice McBride. Yes, good morning, Ms. McLaughlin. I just would like to talk a little bit about the court's, the Fourth District's, analysis in the city of Champaign. Now, in that case, they were dealing specifically with the city council. Is that correct? Correct. And, in that case, it was significant that, to the court's analysis, that the exchange of information utilizing the private phones was during a time when city council was not in session. Is that correct? The court said that the, it deemed certain of those communications public records because they were sent to a quorum while the council was in session. And so, I believe it was the case that the council members were communicating on private devices during that council session. And so, there, the public body's meeting, and this is something that is then deemed by the court to be in the possession of that public body as it's actually doing its, formally doing its work. Would you find the case before us now to be distinguishable, then, from the city of Champaign case? Obviously, the mayor of the city of Chicago is the chief operating or the chief executive officer who, by statute, is able to perform and conduct business on behalf of the city, not necessarily with the city council. He serves, the mayor serves as the convener of the council, but is not necessarily a member, but conducts the city's business. Is that some issue about which, on which we can distinguish city of Champaign from the case before us now? No, Your Honor. The analysis is obviously, when we're talking about an executive branch position, going to be somewhat different than the city council, just in terms of when is something in the possession of that public body. But Champaign still compels the specific connection to the public body, and I think that's, that's what we really need to take away from Champaign here, is that Champaign refused to collapse the distinction between an individual and the public body. And so, and indeed in Champaign, he was potentially conducting some substantive work on private accounts, but even then it wasn't deemed to be communication of the public body. So in the executive branch context, of course, you don't have this quorum of city council members, but you still have the formal operations of a department. You still have the, you know, the Department of Public Health conducting its work as the department. And, and that is still different than the individual communications and business of individual employees of that department. So Champaign explains that that distinction has to be made because it's made in the FOIA statute. The connection between the communication and the public body will be somewhat different in the there has to be some connection. And for example, there are many ways that any city employee will communicate, potentially with their co-workers, that are not communications of their employers. They're not communications on which the department relies to do its business. If someone texts their co-worker that they are running late to a meeting, that is really a communication that they're relying on, but it's not something that's part of the formal work of the department. And so, likewise, if someone complains to their co-worker about their boss, and that's really a private communication, even though it references public business. And so it's, it is important to maintain that distinction because it does preserve this separate space for the private affairs of public employees and doesn't simply say that any time that they make any mention of their work then it's a public record that's subject to production under FOIA. So that's not different. Go back, I think it's straight from your question to go back to it. That is, that distinction between the individual and the public body is not different if we're talking about employees in an executive branch, department, or employees in the city council. That is, and I'm sorry to interrupt you, but that's what the BGA is making, is it? The request that BGA is making significantly more narrow than can we just have access to all of the recordings or the records of every aspect or in any instance in which the lead issue was discussed? The question is a lot more narrow than that, isn't it? I don't think so, your honor. BGA's request is tremendously broad. Well I would disagree with you based on our... I'll yield. All right. We did have a little trouble with the last remarks, but everything will be available tomorrow on the Supreme Court website. So I do have a couple of questions. Ms. McLaughlin, the trial judge, circuit court judge, ruled that the request that was made, any and all, included private emails, private cell phone conversations relating to these issues. Correct. Okay, and so therefore the judge also ruled that your search was not reasonable because you took the position that that was not something that was requested. No, well to clarify, your honor, we don't dispute that when you request communications that that can potentially include communications on private accounts. So we're not taking issue with that piece of the analysis. But in this case, you didn't provide any information along those lines because you felt that they were not required. In this, in response to this request, your honor, the city believed that its search was reasonable and its city search was in fact reasonable when it searched city accounts and there was no indication that additional records were located elsewhere. And so I think we did our search, we produced the record, and then what's important here is that we want to defend that search as reasonable because if that search, given the circumstances here, was not reasonable, the city would always have to include private accounts anytime anybody requested any communications. And that, as I've explained, is very burdensome, but it's also contradicted by the way that FOIA is set up, as well as by the appellate court's analysis in Champaign. So it's not that, the position is not that EGA couldn't get records on private accounts unless it specifically asked for them. Rather, the logic is that the city would not expand a search to include private accounts unless there were indications that that was necessary. And that need not come from the request. The request could be for communication. And then when we begin to undertake our search, we might find that expanding the search is necessary. That just was not where, what the evidence showed here. Well, the BTA then indicated they limited the universe to a number of people. I think it was six, wasn't it? Well, six plus four, weren't there some with the Office of the Mayor and then some with the Department of Public Health, or am I wrong? Either way, there was a limited universe, was there not? Correct. But your search never, but your search never ever included a search of those individuals and a request to them either to indicate that there was nothing or, I mean, did you ever even look? We did not ask those people if they had additional communications on that private account. All right, but whose burden is it to do that? Whose burden is it once there's the FOIA request and they ask for information and it includes possible emails and then it limits them to a number of people? Whose burden is it at that point? The city bears an initial burden. Our burden is to make a premium FOIA case that our search encompass the locations likely to have public records. And once we make that shown, if that is challenged by the requester, the requester then has the burden to show that the search was not reasonable. And so there is a burden shifting that happens here. And as the case law holds, for the requester to show that the search was not reasonable, that requires more than just speculation that additional records could exist. It requires some positive indication that the search missed some responsive records. So we do have a burden. We met that burden because we searched the city email accounts, which is the way that city employees do typically communicate. Those are the likely locations where these records would be located. And of course, if we had seen something there that pointed us to continue searching, then we might have had to take additional steps to gather additional records. That just didn't happen here. Why did the trial judge find that your search was unreasonable? Try to summarize that for me, would you? The trial judge apparently concluded that he couldn't tell if there were additional records on private accounts. Now that's not a... Now that is the best that I can summarize the trial court's analysis, Your Honor. All right. I just wanted one last question that is, you've used this word nexus, and you've used the word connection. I don't know that that's anywhere in the statute at all. I don't know that any court even, I don't think the Champaign court said use this word that you've come up with, nexus. No. You can't add words to the statute. Can we, under general principles of statutory construction? No, Your Honor. Indeed, nexus is a description, simply a way that we're describing Part 2C of FOIA, which does have a very specific definition of what a public record is. And it is, I think, best seen as a two-part description. So, first of all, and this is verbatim from the statute, so we're not trying to alter the plain language of the statute. We're simply trying to apply it, as the court did in Champaign. First, those records pertain to the transaction of public business. And then there is this language that says, having been prepared by or for, or having been, been or being used by, received by, in the possession of, or under the control of any public body. So that language is meaningful. Whether you use the word nexus, connection, if you say there's buckets or categories of records, the statute does explicitly lay out these ways in which the document must have a relationship to the public body. And that's simply what I'm trying to express in saying there's a nexus to the public body. Champaign was very deliberate in trying to unpack what is the relationship between an email on a private account and the public body. And it identified in specific situations, such as when the email is forwarded to the government account, or when it is sent to a quorum of city council members, that has that requisite connection. It fits into one of the categories. But other types of communications do not fit into one of those categories laid out in Section 2C of the statute. So, we don't need to add the word nexus. We can simply follow the statute and it explicitly lays out these types of relationships with the public body that a document must have in order to meet this definition of public record. All right. I'm going to ask Justice House and Justice Cobbs again if they have any further questions at this time. No, thank you. I only have one other question. Oh, I'm sorry, Justice House. No, thank you. I just have one other question. You mentioned earlier in your argument with respect to the timeframe as indicative of the legislature's intent that this additional or this further search not be required. Isn't there also language in FOIA that would permit an extension of time if the responding entity needed that? I mean, isn't that kind of unreasonable to think that the legislature would necessarily conclude you could always answer in five days? The legislature did include a single five-day extension of time. And our position is that even with that five-day extension of time, it's still an unreasonable burden for a public body to have to expand a search to include private accounts in every case. And that because the General Assembly was deliberate in including those time limits, which are quite narrow time limits, that was purposeful. The General Assembly clearly had an interest that FOIA responses be expedient. And that interest in expediency is part of the balancing that the General Assembly did here. There is, of course, the interest in transparency, but also FOIA contemplates expedient responses to requests, as well as preservation of the privacy of the employee. So there are these different concerns. The General Assembly balanced them. And our position is that the reasonable search, just simply requiring a reasonable search without a requirement that private accounts be always included in that, is a way to respect the balance that the General Assembly struck. And indeed, in Champaign, the appellate court spoke to exactly that balance. And it said that it's not for courts to legislate in this area by construing FOIA to encompass personal e-mails, but rather, if the General Assembly wants FOIA to reach e-mails pertaining to city business that have not been used by the public body and reside on employees' private e-mail accounts, it should expressly show states by amending FOIA. In the years following Champaign, the General Assembly has not brought in the definition of public body to include individual employees. And although we don't think that there is a need to amend FOIA, because we don't argue that private accounts can never contain public records or that they would never be produced, if the General Assembly wanted to reset that balance between transparency, between burdensomeness on the public body, and between the privacy interests of public employees, then that is something that the legislature should address. All right. Thank you, Ms. McLaughlin. You'll have time for rebuttal. And we will now permit or allow Mr. Burdett to present his argument. And Mr. Burdett, I'll also indicate that I'm going to have a timer, but, you know, we're not going to cut you off if you have things you need to say. So, you may proceed. May it please the Court, Josh Burdett on behalf of Better Government Association. I'm going to walk through those points that were just discussed. I'm going to take it a little bit in reverse order. So, the request included private e-mails. The trial court found that that's analogous to what happened in the campaign case. The request sought e-mails that never used the word personal or private, and they've offered no basis for straying from what the trial court ruled. And then they concede that they have the burden to perform an adequate search, yet they also concede they performed no search of the private e-mail accounts at all. And what we're talking about here is really simple. What the trial court ordered was go ask five or six people, just take a few minutes and ask five or six people if they have the responsive records, if they have any records responsive to this request. And they did not take that incredibly simple and short step. And that also goes directly to the point that they've raised a couple of times about burden or privacy concerns. They say taking a few minutes to go ask a few people is somehow too burdensome. Well, one, the statute provides for an extension of time to ten days, and so they have more time to do that in. But two, we're only talking about a very minimal burden to begin with in this case. They agree that it should be a case-by-case analysis, and we agree it should be a case-by-case analysis. We're talking about asking five or six people if they have responsive records, just asking them. And if there were an instance where it was too burdensome, you know, hundreds of people were going to have to be asked or something like that, well, FOIA has a mechanism for that. It's the Section 3G Undue Burden Exemption, an exemption that they actually initially asserted here over the original request before it was narrowed down to something so tailored as to be just asking for five people. And so what's the alternative then? So taking a few minutes and going and simply asking a few people if they possess records that are responsive. What's the alternative? They want to put the burden on the requester to have evidence that these records exist ahead of time, and only in the most extreme set of circumstances where a requester is lucky enough to know that would they really be able to. I sure hope that going and asking people is nothing new and that this is something that FOIA officers routinely do. There are plenty of FOIA requests where a FOIA officer may be able to just enter search terms into a central database and that turns up all the records that are requested and there's no where else that needs to be looked. But there's plenty of times that a request is going to look for things that are in a file cabinet in someone's office or stored locally on someone's computer. And I'm sure hopeful FOIA officers aren't just guessing whether they've gotten all the responsive records or not and that they already have been going and asking the relevant custodians of those records are the people likely to have records stored locally if they possess records responsive to a request. So we're not even talking about anything new. We're talking about taking five minutes and asking the people that are likely to have the records if they do. And they're not even taking that initial step. The privacy concerns. There are no privacy concerns. The whole point here is the trial court ordered the simplest solution possible. All that the public body is doing is asking the relevant people if they have the records. They're not logging in. They're not getting people's credentials and logging into their personal email accounts. Nothing like that. All they're doing is asking people to take a look at their own accounts. Do you have anything on your own account? There's no invasion of privacy there at all. There's a good deal of discussion about the Champaign case and for good reason because the Champaign case has already addressed these issues. The Champaign case held that communications on private email accounts can be responsive and can be public records, a point that has been conceded and we're past that now. And it also shows that then a search needs to be done and there's no issue with performing a search like that. So the Champaign case has already dealt with both pieces of that. The whole issue about a quorum and a legislative body needs to have a quorum of members to act as a public body, that's just not present here. We're talking about an executive body. So we heard reference to there supposedly being a distinction about an individual employee versus a public body. Well, that's just completely a fiction. A public body can only act through its employees. If they're acting within the scope of their job duties, then the public body is acting. And we cited a great deal of case law supporting that. The Teneri case in Illinois and other cases around the country. And it's also just common sense. At least at this point, our public bodies aren't being run by artificial intelligence. For a public body to act, it has to be acting through a person. Your Honor's noted that they use these words, nexus and connection, rather than just going from the plain language of the statute. And that could potentially have impact if they want to change the definition. They say they don't. The briefing makes it seem like they do. But regardless, using that nexus argument, they give examples of instances where they say the definition wouldn't apply. So they talk about employees complaining about a co-worker, or running late, or something that they say doesn't apply. Well, one, we don't even need to address those issues because all parties agree that this is a case-by-case analysis. And we're not talking about a potentially fringe subject matter that may or may not be public business. Someone complaining about whether, you know, a co-worker or being late or something like that. We're talking about public officials discussing lead in the drinking water of our schoolchildren. We're talking about children going to public school and the water they drink having lead in it. And our public officials discussing that. This is not a fringe issue. This is front and center public business. Public records and public business, public records is clearly defined in the statute. Champagne defines public business. It's been defined broadly. The subject matter here is clearly in that definition. We're not talking about any of those other fringe examples. And again, this isn't a request for a large number of people. We're talking about a request for five or six people, and all they need to do is spend five or ten minutes to go ask these people if they have responsive records. And are we really going to make Illinois the first state in the country where day one on the job, public employees create a Gmail account and conduct all of their public business on the Gmail account and never use a government account again? That's not what any other state has created. And that's not what Illinois should create. We should not allow such obvious evasion. And that has been an issue that has come up repeatedly. And that's not us just inventing language. Other courts have stated this explicitly. I'll just read a one sentence quote. We cited something like a dozen cases. But I'll just read this one sentence from Clark E. Biddle. Quote, if public officials were allowed to conduct business through personal email accounts to evade open record law, the law would serve no function and would result in all public officials conducting public business via personal email. End quote. And they're trying to create a world where requesters can functionally never get access to the records. They say the burden is completely on the requester. And so absent an extreme set of circumstances like Hillary Clinton's emails for example, where a hacker had to literally break the law to go find her emails, then the public would not have any way of knowing. There's two points. The court should specifically hold here that records on private email accounts that relate to public business in this case the matter of lead in our children's drinking water at school are public records. And the court should also hold that the trial court needs to be upheld and they need to take five minutes and simply go ask these people if they possess responsive records. All right. I think it's time for you to try to sum it up here, Bill. If you would, please. Sure. In sum, the solution is really simple. They've offered no basis for straying from what the trial court has ordered the solution to be, and that is they can't perform no search at all. They need to at least go ask and spend five minutes asking people if they have responsive records. All right. I'm going to now turn it over again to Justice House and Justice Copps to see if there's questions they have. Justice House? Thank you. I don't have any questions. All right. Justice Copps. Thank you, Justice McBride. Mr. Burdett, just one question. In response to the city's argument on reasonableness versus speculativeness, they argue that your request, that BJA's request is to ask these several other individuals the simple question of whether you've conducted business is speculative. You have no basis upon which to make the request. How do you respond to that? Well, the trial court found that that is included in our request. I would also point out that in the complaint we allege that they acknowledge that some of these individuals conduct business on their personal email accounts, something that they never denied in their answer. But again, that's just putting the burden on us. It's their burden to come forward with evidence that they did a reasonable search. And only if they meet that threshold requirement does the burden go back to the requester to come up with something beyond speculation. So they've never passed their threshold burden because they didn't perform any search at all. And what with respect to the notion that, and I certainly don't agree that emails or text messages about I'm going to be late for work or I don't like this boss or the other is not what we're talking about here. That diminishes really the substantialness of this argument. But what with respect to this spiraling down and perhaps a greater invasion of privacy. Should we be concerned at all about invasions of privacy? There's no invasion of privacy here because there's no one looking at anyone's account except for the individual person looking at their own account. So there's no invasion of privacy concern at all. Are we opening a door? No, we're not. Only the emails that the individual identified as being responsive would be the ones looked at. So they themselves would be telling the public body which ones to look at. There would be no sifting through their, having a third person sifting through their email account. That wouldn't happen at all. Thank you Mr. Burdett. Mr. Burdett, I'm going to go back to Justice Cobb's question. What is it that you believe in your request suggested that there were any kind of communications on private emails or cell phones or the like that would suggest that the city should go through the process of seeking out this information? So part of that question goes to the point of is the burden on us to even know that in the first place? Our position is no, the burden is not on the requester. No court in the country that's addressed this issue has said that. They said that burden is on the public body. But here the point is that it's unknown. It's theoretically possible that there are no records on the private email accounts, but they haven't even met that threshold burden of performing an initial search, just asking the question. And on top of that, I would also just note that we did allege in the complaint that some of these individuals are known to conduct business on their personal account. And in that answer to the complaint, is it correct that there was an admission that members of the Office of the Mayor and perhaps the Department of Public Health had previously conducted official business on private emails, cell phones, any other kind of device? So there's no explicit admission. What they say is that it's not relevant to the case, so essentially we don't have to answer this. And they declined to answer that. Now, in this particular instance, the requester is lucky enough to know, based on prior litigation, that sometimes these individuals do conduct business on personal email accounts. For example, in a prior litigation, the mayor turned over emails where he had been conducting business on his personal account, and that uncovered things like lobbyist ethical violations, where people were lobbying without registering as lobbyists. But that's not going to be the case. The requester is not going to know in most instances for certain whether there are responsive records on a personal account or not. And that's why every court that's addressed this issue has declined to put that into flip-flop FOIA's because they don't have legal standards on adequacy of the search. And in this one instance, put a burden on the requester. All the courts that have addressed this put the burden on the public body to ask the question first, are there responsive records there? And there's no reason for Illinois to be the first state in the country to stray from that and create a world where either explicitly or de facto public bodies can evade disclosure in that manner. Finally, going to the privacy question. Other courts, I think the Nissen case one of the ones you cited suggested that the way to go about this is to just ask the gatherer of the information, the FOIA individual searching. It's escaping me what to call it. But to ask the   So, it's a limited universe. They can search themselves. It's not that the city actually goes into anyone's e-mails. And then they either say by way of an affidavit there's nothing that, there's no information that was discussed related to public business. And that's pretty much it. If there is, then they indicate so. But the affidavit would pretty much conclude the matter one way or the other. Is that kind of what you envision? Yes, Your Honor. That's exactly right. The individuals would conduct a search. They would give whatever the answer, if they needed to. And then they would tell the FOIA officer what the results were. And then, if it was in litigation, a reasonably detailed affidavit about the search is all the evidence that would be required. Alright. I don't have anything further. Anything further, Justice House or Justice Copps? Alright. Then we're going to return now to Ms. McLaughlin for your rebuttal. Thank you, Your Honor. I'd like to explain why the city brought this appeal in this case. Because, as counsel has noted, there are other cases in which the city has produced e-mails from private e-mail accounts and has not contested that those would be subject to FOIA. So what made this case different? What made this case the one that we felt we had to appeal? What was distinct about this case is that there simply was no indication that anyone was using private e-mail to communicate about this subject matter, that issue. And therefore, the city met its burden, which we acknowledge is our burden, to establish a prima facie case that our search was reasonable. That we had searched in the locations likely to include public records. Here, there was not any, as I've explained, no positive indications that other records were out there. And therefore, we concluded that we completed a reasonable search. Now, BGA has noted that there are other instances where people in the mayor's office had communicated with each other using private e-mail accounts, and that's not a dispute. Nobody in the Department of Public Health had done that, and certainly Dr. Morita had not done that, and she was a party to every communication that BGA requested. And so, even if, and this did not happen here, but even if someone in the mayor's office had used a private account to communicate with Dr. Morita, that would be captured by the search of her city e-mail account. And of course, the city doesn't have to produce duplicate records. And so, by searching Dr. Morita's city e-mail account along with those of the other custodians, that captured the relevant universal responsive records. Now, that is, our FOIA team knows that the way people communicate at the city is through those city e-mail accounts, and that would presumably be where these communications were  So, we do acknowledge that there hypothetically could be some other type of communication, and then the question becomes, when do we have to look for that? And the concern in this case, and why we brought this appeal, was that we shouldn't have to expand our search in this additional way without some indication that it's necessary. And that just was not present here, and I did not hear anything in opposing counsel's remarks that pointed to why in this record there was any indication that that was necessary. I've heard about other courts, other cases, but not about the record in this case. So, this was sort of a perfect example of a situation where the city's search of city e-mail accounts was a reasonable search. Now, if then, so that means that the position that BGA is taking is that we always have to do it. And that's a problem, and let me explain why, because I take great issue with the idea that it takes five minutes. It does not, and I know that our FOIA team is listening in here, and their heads would explode at the idea that this takes five minutes. This is very burdensome additional steps that would have to be taken. They would have to locate the people. These people may not work for the city. You know people do not always respond to e-mails or phone calls immediately. They would have to discuss what's required. They would have to wait for a response. They would have to deal with what they should do if the person simply refuses. So there are always additional pieces to the puzzle that make it much, much different than simply plugging our search terms into our city record system. It is a transformation of the burden that our FOIA team has to undertake. Now, it's not that we would never do that. Of course. It's our obligation to find the records if there's an indication that they exist. But what BGA is saying is that we have to do it in every case. And that is going to render public bodies highly burdened by this type of request. Because they certainly will proliferate. People will be very interested in seeing what might be on public employees' private accounts. And so we are very careful that this is going to overwhelm our ability to respond expediently to FOIA requests. I want to make a couple other notes in response to Council's point. First, affidavits. Affidavits, as I believe he did say, are required only in litigation. They are not required when we respond initially to a request. I just want to be very clear that there is an affidavit requirement as part of an additional FOIA response. That should not be added to the requirement. And also, there was some language about how don't let Illinois be the only state in which everyone is going to start doing everything on private accounts. Well, other courts have, across the country, addressed this same problem. The cases that BJA cites have by and large concluded that something on a private account is not categorically outside the scope of FOIA. And we go along with that. We do not argue otherwise. But those cases, then, have also addressed the point that we're making here, which is the question of when does the public body have to look in those other locations? And I think if you actually look at that piece of their analysis, that's helpful. For example, we cite in our brief two D.C. District Court cases, Wright and Huntsman and Williams. And there, the courts looked at whether there was any evidence suggesting public records were likely to be found on private email accounts. And, as the court in Wright put it, if there were positive indications of overlooked materials, then summary judgment would be inappropriate. But there was no such evidence in those cases. And therefore, the courts held that the agencies had reasonably limited their searches to their own record systems. So we are not asking this court to make a decision that departs from what courts are doing across the country. Rather, we're asking it to follow the lead of courts that are trying across the country to balance this interest in transparency with allowing the public body to comply with its FOIA obligations in a way that's just feasible. And requiring the search to be reasonable in light of the facts, and allowing the public body to follow the facts and collect the records that it believes necessary or that are necessary depending on what that search reveals, is the way that courts are balancing those obligations. And this court should as well. And for that reason, we ask that the court reverse the judgment of the circuit court and hold that the city did, in this case, conduct a reasonable search in compliance with FOIA. Justice House, returning again, do you have questions at this time for Ms. McLaughlin? Well, just the comment, the argument about the ruling which requires in every case you have to look in individual private records. What we're thinking about here is that  that even if the universe is limited to five people, we're not going to be able to look in private devices unless there's a indication given by the requester that that information is there. No, Your Honor, the indication does not have to be given by the requester. The burden is initially on the public body. We have to search the likely locations of records. And we do not do that if there's some if our team goes into that search and finds indications that there are additional records, then that's part of our burden. We have to expand our search to include those locations. We're not saying that the requester has to have knowledge in advance. We're not saying that they have that burden initially to show that the search is limited. But if the universe is limited to just a handful of people, wouldn't it be reasonable at that point to say, hey, do you have anything on your iPad, for example? No, because it's not likely that the public records exist in a location, then a reasonable search doesn't include that location. It doesn't sound like a lot, I know. However, it is in holding that a search always has to include a particular location, that is not consistent with FOIA case law and it is eliminating the reasonable search principle from the FOIA doctrine because that, in effect, would say there is this one-size-fits-all requirement in FOIA. It's not case-by-case. You always have to do this. And what we're saying is, no, let us go where the facts lead in the case. The facts in this case did not lead to those accounts and therefore we don't go there. Where it's in another case, we might need to do that. So we're not saying we will never search private accounts. We're simply saying that we don't do it unless there are positive indications that responsive public records are located there and that was not the case here. Thank you. I'm sorry. Thank you. So just following up a little bit on Justice House's question, so BGA indicated that there are five or so individuals that because of some past activity or knowledge that BGA has about the involvement of these individuals that personal or private emails or text accounts might have been utilized. How much more reasonable would you need or how much less speculative would you need for a requester to be in order to prompt the responding entity to do a search? I don't know how a requesting entity would know any more other than to have first-hand knowledge and they likely would never know that. They did not have first-hand knowledge that was relevant to this case because Dr. Morita was a part of every communication in this case and there was no mention I didn't hear Dr. Morita's name come out of counsel's mouth. It never included in any of their briefs any explanation as to why it was likely that that individual used a private account for work or communication. Yes, some people use private accounts to communicate amongst themselves in other contexts but that does not mean that the city always has to include private accounts in every search. Is BGA arguing, I mean I heard them say that this is a case-by-case these are case-by-case issues. Is BGA really arguing that this must be the case-by-case? No, they said case-by-case but the words case-by-case can't be squared with the argument that they're making because if it's case-by-case then why this case? What was it? What in that record production that we gave them was deficient? They've not addressed that. They've not pointed to anything. Why should we think that Dr. Morita was using a private email account? There is no indication that that happened. And so, yeah I think we agree it's case-by-case but what about the case matters? Is it that in every case you could speculate that additional records could exist? That's not a case-by-case analysis. A case-by-case analysis has to focus on what indications in this case were there that the record production was insufficient? And it's not enough to just say there could be something else out there because that alone is just speculative and it doesn't render the search that we conducted in this case unreasonable. I have just two more questions. One's really, really quick. The legislature has not amended FOIA to preclude a request into private emails or texts, have they? There's been no, they have not amended FOIA to say these are off-bound, out-of-bounds, have they? No, Your Honor. Although, I do think it's important to note when does a lack of legislative action provide an indication as to the legislature's intent? And that's, as we know from the case law, there are many reasons the legislature doesn't act. But we can infer something about legislative intent when there has been a case that has made a statement and then the legislature did not act in response to that case. And that's what we're looking at with Champaign. Champaign states, Champaign essentially invites the legislature to make an amendment to require FOIA to reach emails pertaining to city business on private email accounts. Champaign says that, that that is something the legislature can do if it wants to and it's not for the courts to legislate that. And in the face of that invitation from the appellate court, the legislature did not amend FOIA in response. And so that is a situation where you can infer something about legislative intent from the absence of action. The fact that the legislature didn't affirmatively make an amendment to FOIA really doesn't according to the case law give us any indication about the intent of the legislature. And then one final question and I'll be through. You commented earlier about the burden that it would place on public entities if they needed to engage in a search as broad as you are characterizing the BGA search. And I'm not by any means agreeing with you that BGA's request is broad. I don't want to suggest that at all at this point. But isn't it a balancing test? I mean the public's right to know what its public bodies are engaged in versus how cumbersome it might be to inform the public about that work. I mean on balance don't we usually wouldn't the balance of the scale tip towards allowing the public to be fully apprised? I'm not really buying your burdensome argument. Your Honor, first of all it is a balancing test. It is a balance for the court to decide if that is a question for the General Assembly because that body is in the position to weigh the countervailing interest. And that's what Champaign recognized. And so yes, there's an interest in transparency but there are these other countervailing interests and that is really something that is best left to the legislature to weigh. However I do want to come back to why it's burdensome because I know that five people doesn't sound burdensome and that's not the true burden. The burden is that if there is no requirement that we only do a search if there's a clear reason to or if there's evidence that says we need to do this then we have to do it all the time. And so it's not that in one case it's burdensome. Asking five people we could probably do that without breaking the system. But if we do that in response to every request for communications then that does potentially break the system. It does undermine the functioning of the public body with respect to FOIA obligations because it does create additional burdens on our FOIA officers. And the FOIA officers of public bodies across the state. And so I just want to be very careful that we understand that the burden is not the burden in this case. The burden is a systemic burden that is created by doing away with having to have some trigger for the expansion of the search that is positive indications of additional records that's not here, that's not this case. And so if that additional burden must be undertaken in this case potentially has to be undertaken across the board. And that's the burden that I'm talking about. I'm not talking about five people. I'm not talking about five minutes. It's not five minutes. But putting that aside, the burden is a systemic burden. The burden is well what happens then? What happens in the next hundred cases? And that's our concern. And that's why we brought this appeal because this appeal in this case there was no indication that Dr. Morita was using a private email account for these communications. None whatsoever. BJA did not point to anything involving her use of private email. And therefore the city would not under it was logical, it was reasonable for the city to search the city email accounts in this case. And that's that the undertaking that additional burden wasn't needed here and should not be required in the future in the broad range of cases that would likely come up if the court were to require the city to always be undertaking these burdens in response to FOIA requests. Alright, I have some questions now. This was initiated by FOIA requests to both the City of Chicago Office of the Mayor and the City of Chicago Department of Public Health. Is that accurate? Correct. And they're each defendants in this matter. Is that correct? That's correct. And the request or the BJA made requests of each entity, or public body rather, but we know they're public bodies. Is that right? Would you agree to that? There were two requests and they were directed to the Mayor's office and to the Department of Public Health. Correct. And part of the complaint alleged that on previous occasions, the Office of the Mayor had conducted public business via a cell phone or text communications, emails. Was that correct? Was that an allegation? Your Honor, I don't recall if that allegation is in the complaint. Well, counsel just indicated that earlier. I think that that was an allegation and he had indicated that the answer was that we don't have enough information to answer that. I don't know, but the fact of the matter is that let's assume that that was an allegation that the Mayor's office had in the past used cell phones, private cell phones, emails. I mean, this isn't something that's beyond the norm at all. We know that as a rule. So, isn't that enough, at least as far as the Office of the Mayor? No, Your Honor, because every communication that was participated in by someone in the Mayor's office, an issue here was also participated in by Dr. Morita. BJA requested communications between Dr. Morita and persons in the Mayor's office and BJA requested communications between Dr. Morita and persons at CPS. And therefore, there is no communication that was requested that doesn't include that individual. Therefore, it's not the case that some of the relevant communications might be between those people in the Mayor's office. They would all go through Dr. Morita. And that's part of the argument, why there wasn't this indication since she was using, all indications were that she was using city email accounts and not other forms of communication. And that's why it was reasonable to conclude that the search of the city email accounts would have captured all the relevant communications. And then when we actually looked at the records, they were discussing this matter on those city emails and there was nothing in those records that demonstrated that there might be something else going on or some other documents out there. And I would note, too, that the circuit court reviewed these records in camera because we redacted them and so the court reviewed everything to make sure that the redactions were appropriate. And therefore, the court saw all of these documents in full and did not identify anything in those documents that suggested that the production was incomplete. All he said was it's not clear if there are other communications. So again, we think that this is your speculation. Now, what is the basis of your representation to us today that Dr. Merida somewhere in the records you're suggesting that there's affirmative information that Dr. Merida never used anything other than her public email and that no one else at all in the universe used any private communication method? I think what you're getting at is that we can't prove a negative here. I'm just asking, you've made the representation. Where is that coming from in this record that we can find? It is simply coming from the fact that there is no positive indication that that was the case. I use the term positive indication because that's the phrase that the district court used in the right case that we cite. The court said that there was no positive indication of overlooked materials. So here, I think following that approach, there are no positive indications that there were other accounts used. So this was a summary judgment matter. The court granted part summary judgment to the city, also the mayor, public health, and it also granted summary judgment in part to the Better Government Association. I guess I'm asking you, what is the basis for your report that what factual matter or affirmation is there in the record that you can conclude that Dr. Morita never communicated with anyone other than through her own public email and that everyone else that communicated with her vis-a-vis the lead in the water issue didn't raise any question about this? What is it in the record that you can give us that we can say there's no indication that there was ever any communications of any kind other than through the public emails and public, the phones that were assigned via, you know, these positions in their office, respective offices? The record demonstrates that communications were made on the city email account including Dr. Morita's city email account and there is no positive indication that additional communications on private accounts occurred. Okay, and how do we gather that though? Like you even indicated yourself that you can't disprove negative. What is it that you're asking us to base our decision on? The request initially was for any and all communications. You've already conceded that this is not, you're not suggesting that that wouldn't include private emails, private cell phones, text messages, other forms of communication. So where are you was there an affidavit or anything by Dr. Morita? Were the emails was, did someone that sought these out communicate via an email I'm sorry, an affidavit or something that would suggest that not a single email indicates that any other communication except through a public communication exists in this case? Your Honor, there is no affidavit from Dr. Morita, but I think it's relevant to explain how this developed in the circuit court because that does bear on why there's not that particular affidavit. In its opening brief, BGA did not make an argument about private accounts so it did not challenge the response the response of documents for not including private accounts. But the judge specifically said that you lost on that one and that their request said any and all and that included private emails. Didn't he specifically find that? You did and I think I wasn't clear, Your Honor. I'm talking about BGA's opening brief in the circuit court and I just want to explain how the argument arose in the circuit court about private emails because that does explain why there isn't an affidavit that speaks to private emails. BGA simply challenged the redactions that the city made in its opening brief. We responded to that. They filed a reply brief and again that was the issue. And then the city was ordered to produce supplemental affidavits about the search it did. Again, the issue of private emails had not been brought up yet and so we did produce affidavits from our data analysts who conducted the search of the city record systems and they explained these are the terms we used this is how we did the search. And it was only after that, after the BGA filed a supplemental brief or supplemental reply brief, we could say saying, by the way we think the city should have searched private accounts. So that argument arose in this 11th hour situation after the summary judgment briefing and after the city had produced its affidavits. And the court, as you know or as you have said, Your Honor, said, okay, well I'm going to hold the search not reasonable because it didn't include private accounts. But that ruling seemingly is based simply on this 11th hour filing that BGA made, not on the briefing and the summary judgment and the affidavits that the city produced as part of that summary judgment process. And so our concern was this is this last minute argument that was not developed that was tacked on at the end of the case and that didn't point to record evidence. It simply said hey, the city didn't do this. And the court said, you're right, I don't know if there's anything there. That is really just a that really is the epitome of relying on speculation. And so in this situation, we feel like that wasn't enough to render the search that we did unreasonable. And yes, perhaps if this had been raised earlier there might have been affidavits there were affidavits on summary judgment but that issue simply had not been raised. But I guess I'm saying you basically indicated that since there was no indication that there could be these emails, there was no search ever done. Correct. Alright. Any other questions by the other panel members before we conclude? No, thank you. I have no other questions. Thank you. I'd like to, on behalf of the Justice's House and Justice Copps and myself, thank both the attorneys for your presentations today. We appreciate the presentations. The briefs have been well argued. And we will take this matter under advisement. So thank you very much for participating in our Zoom oral and we'll take it under advisement and the court stands adjourned. Thank you. Thank you, Your Honors.